

U.S. Department of Justice

United States Attorney
Eastern District of New York

NS:NEM
F#: 2018R02175

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 31, 2020

By ECF

The Honorable Ramon E. Reyes, Jr.:
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Stanley Elianor
                Criminal Docket No. 20-332 (MKB)

Dear Judge Reyes:

        On August 27, 2020, a grand jury sitting in the Eastern District of New York returned an indictment (the "Indictment") charging the defendant Stanley Elianor with being a felon in possession of a firearm and ammunition. The government respectfully submits this letter in support of the pretrial detention of the defendant Stanley Elianor.

        As set forth below, Elianor, a member of the Folk Nation street gang, participated in a gang-related shooting at the 2015 J'ouvert cultural celebration that left Carey Gabey, an aide to Governor Andrew Cuomo, dead. The facts underling the instant offense alone warrant detention in this case. In addition to this shooting, as set forth below, Elianor has illegally possessed numerous firearms. In light of his history, there is no set of conditions that would ensure the safety of the community. For these reasons, no conditions of bail can ensure the safety of the community and Elianor's return to court, and he should therefore be detained. Furthermore, as the defendant is currently serving a state sentence for reckless endangerment, he cannot be released.[1]

---

[1] In an abundance of caution, given the current COVID-19 pandemic, the government submits this detention memorandum notwithstanding that the defendant is currently serving a state sentence in the event the defendant were to later seek or obtain early release from his state sentence.

I.   Background

The defendant is a member of the Folk Nation street gang. Early in the morning of September 7, 2015, while attending the J'ouvert cultural celebration in Brooklyn, New York, the defendant, along with other Folk Nation gang members and members of the Hood Starz, a group that was allied with Folk Nation, engaged in a shootout with members of the Crips, a rival street gang. Carey Gabay, who was attending the celebration, was caught in the crossfire and shot in the head. Gabay passed away from his injuries on September 15, 2015. During the shootout, the defendant possessed a .45 caliber Masterpiece Arms firearm, which was recovered shortly after the shooting. This gun, which had a large capacity magazine, was loaded with 27 rounds of ammunition when it was recovered.

Prior to his possession of this firearm on September 7, 2015, the defendant had been convicted of three felonies. On October 13, 2006, the defendant was convicted of Robbery in the First Degree, Use/Threatened Use of a Dangerous Instrument, after he used a gun and knife to commit a robbery. On October 27, 2009, the defendant was convicted of two counts of Attempted Criminal Possession of a Weapon in the Second Degree, Loaded Firearm. One of these counts related to the defendant shooting at an individual. The defendant was then found to be in possession of a .22 long rifle, which had been stolen. The second count related to the defendant's possession of a loaded firearm, which was found after he jumped a turnstile, resisted arrest and injured the knee and back of one NYPD officer and injured the hip and neck of another. At the time of this arrest, the defendant provided a false name and date of birth to law enforcement.

In addition to these three convictions, all of which involved the illegal possession of a firearm, Elianor was also (1) convicted in 2017 of being a felon in possession of a firearm in the Eastern District of New York; (2) convicted in 2018 of Reckless Endangerment in the First Degree, for his participation in the September 7, 2015 shootout related to the instant charge; and (3) convicted in 2019 of Possession of a Forged Instrument in the Second Degree. Elianor's lengthy criminal history also includes a juvenile delinquent adjudication for Criminal Possession of a Loaded Firearm in the Third Degree.

II.   Legal Standard

The Bail Reform Act of 1984, codified at 18 U.S.C. §§ 3141-3156, "requires that an accused be detained pending trial where, following a hearing in accordance with § 3142(f), 'the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" United States v. English, 629 F.3d 311, 318 (2d Cir. 2011) (quoting 18 U.S.C. § 3142(e)(1)). The government bears the burden of persuading the court by a preponderance of the evidence that the defendant is a flight risk or by clear and convincing evidence that the defendant is a danger to the community. United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001).

The government may proceed by proffer to establish facts relevant to a detention determination. United States v. Ferranti, 66 F.3d 540, 541 (2d Cir. 1995). Furthermore, "[t]he rules of evidence do not apply in a detention hearing." Id. at 542. As the Second Circuit has explained:

> [I]n the pre-trial context, few detention hearings involve live testimony or cross examination. Most proceed on proffers. See United States v. LaFontaine, 210 F.3d 125, 131 (2d Cir. 2000). This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." United States v. Acevedo-Ramos, 755 F.2d 203, 206 (1st Cir. 1985) (Breyer, J.) (quoted approvingly in LaFontaine, 210 F.3d at 131). Indeed, § 3142(f)(2)(B) expressly states that the Federal Rules of Evidence do not apply at bail hearings; thus, courts often base detention decisions on hearsay evidence. Id.

United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004).

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, "including whether the offense is a crime of violence . . . or involves a . . . firearm"; (2) the history and characteristics of the defendant; (3) the seriousness of the danger posed by the defendant's release and (4) the weight of the evidence against the defendant. See 18 U.S.C. § 3142(g). Specifically, in evaluating dangerousness, courts consider not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

III.   Argument

The defendant is a significant danger to the community and a flight risk, and the factors set forth in 18 U.S.C. § 3142(g) weigh heavily in favor of detention. First, the instant offense is a crime of violence and it "involves a . . . firearm." 18 U.S.C. § 3142(g). See United States v. Watkins, 940 F.3d 152, 163 (2d Cir. 2019) ("It has long been the law of our Circuit that possession of a firearm is unequivocally a crime of violence for purposes of § 3142(f)(1)(A)"); United States v. Williams, 20-CR-293, ECF No. 14, at 3 – 4 (E.D.N.Y. Aug.13, 2020). The defendant, a member of Folk Nation, engaged in a shootout that left Carey Gabay dead. There can be no serious dispute that the facts underlying Elianor's crime are extraordinarily serious. See United States v. Dillard, 214 F.3d 88, 94 (2d Cir. 2000) ("The risk of violent use posed by a convicted felon's possession of firearms is significant."); Williams, 20-CR-293, ECF No. 14 at 4 ("Defendant's charged conduct is serious, particularly considering the actions the Defendant allegedly took with that firearm—firing a shot at a rival gang member").

3

The defendant's history and characteristics also weigh heavily in favor of detention. Elianor has six felony convictions and a juvenile adjudication, six of which involved a firearm, and eight prior arrests. His convictions have done nothing to deter his criminal conduct. Even while on pretrial release or parole the defendant has continued to commit additional crimes. Elianor was referred to family court in 2006 for weapons possession while on release for robbery. He was arrested in 2008 in relation to one of his Attempted Criminal Possession of a Weapon convictions approximately two months after he was paroled for his robbery conviction and he was separately arrested in connection with his other Attempted Criminal Possession of a Weapon conviction approximately two months later. While on parole for his weapons possession convictions, the defendant was arrested (1) in 2012 for reckless endangerment and weapons possession, (2) in 2014 for forgery and drug possession, and (3) in 2014 for assault. While the defendant was on pretrial release for Criminal Possession of a Weapon in the Second Degree – Loaded Firearm, he was arrested three times for forgery and participated in the shootout described above. The defendant's extensive history of criminal activity and non-compliance with rules while on release show a complete disregard for the rule of law and make clear that even after repeated contacts with the criminal justice system, the defendant continued to illegally possess firearms. Williams, 20-CR-293, ECF No. 14 at 6 – 7 ("Defendant's non-compliance with the terms of his parole and engagement in further criminal activity presents a danger to the community") (citing Millan, 4 F.3d at 1048.

Relatedly, "the nature and seriousness of the danger to any person or the community that would be posed by the person's release" strongly supports a finding of dangerousness. The charge in the indictment underscores the serious risk of danger posed by the defendant's release. First, any of the shots the defendant fired during a crowded cultural event could have injured or killed his targets or any of the New Yorkers in the defendant's path; indeed Carey Gabay was killed in the crossfire of the shootout the defendant participated in. This flagrant disregard for human life, on its own, weighs heavily in favor of detention. Additionally, the defendant's repeated arrests for the illegal possession of firearms suggests that this shooting was not an aberration—it was the direct product of the defendant's access to firearms coupled with his willingness to use them. Moreover, the fact that the defendant possessed a firearm and ammunition while on pretrial release for another firearms offense is troubling. The defendant had no lawful means of obtaining a firearm or any ammunition, yet he possessed a firearm with a high-capacity magazine and multiple different brands of ammunition. This course of conduct goes directly to the risk that the defendant "'might engage in criminal activity to the detriment of the community.'" Millan, 4 F.3d at 1048 (quoting legislative history).

Finally, the evidence against the defendant is overwhelming and includes (1) surveillance video that shows the defendant in and around Ebbets Field, in front of which the shootout took place, in the early morning hours of September 7, 2015; (2) testimony of the NYPD officers who found and recovered the firearm the defendant possessed; (3) testimony of a cooperating witness who saw Elianor shooting an Uzi-type gun at J'ouvert; (4) certified copies of the defendant's prior convictions; (5) testimony of an interstate nexus expert; (6) the recovered firearm and ammunition and (7) testimony of the expert who analyzed the DNA

4

recovered from the firearm, who concluded that the odds that the DNA recovered from the firearm was not the defendant's was one in greater than 6.8 trillion.

Moreover, the government estimates that for purposes of the United States Sentencing Guidelines, Elianor is in criminal history category VI and the advisory Guidelines range of imprisonment will therefore be 120 months' imprisonment.[2] The likelihood of a lengthy term of imprisonment gives rise to a risk of flight and weighs in favor of detention.[3]

IV.     Conclusion

For the reasons set forth above, the government respectfully submits that no condition or combination of conditions will properly assure the safety of the community or the defendant's return to court if the defendant is released on bail, and therefore requests that the Court order that the defendant be detained pending trial.

Respectfully submitted,

SETH D. DUCHARME
Acting United States Attorney

By:   /s/
Nadia E. Moore
Assistant U.S. Attorney
(718) 254-7000

cc:   Clerk of the Court (by ECF)

---

[2] The government's current estimate is premised on a base offense level of 22 under § 2K2.1(a)(3), plus a four-level enhancement for an altered serial number under § 2K2.1(b)(4)(B) and a four-level enhancement of possession during another felony offense under § 2K2.1(b)(6)(B), for a total offense level of 30. This is merely an estimate and does not bind the government or reflect the position it will take at sentencing in this matter.

[3] See, e.g., United States v. Scali, 738 Fed. Appx. 32, 33 (2d Cir. 2018) ("The court reasonably determined that [defendant's] Guidelines range of 87–108 months' imprisonment was significant enough to provide an incentive to flee"); see also United States v. Blanco, 570 Fed. Appx. 76, 77 (2d Cir. 2014) (affirming district court's order of detention because, inter alia, defendant "face[d] a mandatory minimum prison sentence of five years, a possible maximum sentence of 40 years").